UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| IN RE: LACK'S STORES, INC., et al., § | |
| § | |
| Debtors, § | |
| § | |
| THE GROUP FAMILY LIMITED § | CIVIL ACTION NO. 6:12-CV-37 |
| PARTNERSHIP, § | CIVIL ACTION NO. 6:12-CV-41 |
| § | BANKRUPTCY CASE NO. 10-60149 |
| Appellant, § | |
| VS. § | |
| § | |
| THRIVENT FINANCIAL FOR § | |
| LUTHERANS, § | |
| § | |
| Cross-Appellant. § | |

## OPINION ON BANKRUPTCY APPEAL

This is an appeal from a bankruptcy court decision ruling on competing claims to lease rejection damages in a commercial bankruptcy. In November 2010, Debtor Lack's Stores, Inc. filed for Chapter 11 bankruptcy and rejected the lease for one of its retail stores located in Austin. Lack's landlord, Appellant The Group Family Limited Partnership (GFP), and GFP's secured lender, Cross-Appellant Thrivent Financial for Lutherans, filed competing claims for the lease rejection damages in Lack's Chapter 11 case. The bankruptcy court awarded the damages to GFP subject to a lien in Thrivent's favor. Both parties have appealed that ruling.[1]

---

[1] Due to a docketing error, the cross-appeals and briefing were docketed under the separate cause numbers 6:12-CV-37 and 6:12-CV-41. Where appropriate, the Court will preface its citations

After a detailed review of the facts of this case, the argument and briefing of counsel, and the applicable law, the Court **AFFIRMS** the ruling of the bankruptcy court.

I.   BACKGROUND

   A.   The Lack's Lease and the GFP–Thrivent Loan

Lack's Stores, Inc., a longtime Texas-based furniture retail chain headquartered in Victoria, filed for Chapter 11 bankruptcy in November 2010 and subsequently closed its stores. This appeal concerns the parties' rights to damages arising out of Lack's rejection of the lease for one of those stores, located on U.S. Highway 183 in north Austin. In 2003, Lack's signed a 20-year lease on the Austin store premises with The J-Bar Group, Inc. Case No. 37, Docket Entry No. 7-2 at 2; Case No. 41, Docket Entry No. 3-5 at 3. GFP later bought out J-Bar's interest and became Lack's landlord at the Austin store.

In September 2005, GFP took out a $3,400,000 loan from Thrivent. To secure the note on the loan, GFP executed several documents in favor of Thrivent: a Deed of Trust, an Assignment of Leases and Rents, and a Subordination and Attornment Agreement. Together, these documents gave Thrivent a security interest in the Austin store premises, assigned all rents and profits from the Lack's lease to Thrivent, and gave Thrivent the right to collect the rents directly from

---

with "Case No. 37" or "Case No. 41" to avoid confusion.

Lack's. *See* Case No. 41, Docket Entry Nos. 4-2 at 2; 3-3 at 4; 3-4 at 3. However, under the Assignment, GFP retained a license to "collect all of the Rents, but not prior to accrual, and to retain, use and enjoy the same unless and until an Event of Default," though it was prohibited from anticipating the rents more than one month in advance of accrual. Case No. 41, Docket Entry Nos. 3-3 at 4; 4-2 at 1.

This appeal implicates a number of provisions in the loan documents. The first is the granting clause of the Assignment, under which GFP assigned to Thrivent all of its rights in the "Rents," a defined term that included not only normal rent payments, but also all "claims for damages resulting from default under [the Lack's lease] whether resulting from acts of insolvency or acts of bankruptcy or otherwise, and lump sum payments for the cancellation of [the Lack's lease] . . . ." Case No. 41, Docket Entry No. 3-3 at 3. The second provision is Section 6.3 of the Deed of Trust, which, in relevant part, states as follows:

> [GFP] does hereby unconditionally and absolutely sell, assign and transfer unto [Thrivent] all of the leases, rents, issues, income and profits . . . provided, [GFP] is hereby given a license by [Thrivent] to collect and retain such rents and profits unless and until an Event of Default exists under this Deed of Trust. [GFP] assigns to [Thrivent] . . . all claims for damages arising from rejection of any lease under the bankruptcy laws.

Case No. 41, Docket Entry No. 4-2 at 2. Additionally, the final part of Section 6.3 states that the rights granted Thrivent in the Deed were in addition to those granted in the Assignment, but, in the event of a conflict between Section 6.3 and the

Assignment, the terms of the Assignment would control.

The final provision at issue is the first covenant in the Subordination and Attornment Agreement, under which GFP, Thrivent, and Lack's agreed that:

> [GFP] shall absolutely grant, transfer, and assign to [Thrivent] the Lease and all rents and other sums payable under the Lease; provided, however, that until written demand is made by [Thrivent] to [Lack's], all rents . . . shall be paid to [GFP], but only as they accrue.  [GFP] covenants and agrees that upon [Lack's] receipt of written notice from [Thrivent] to pay the rent to [Thrivent] . . . [Lack's] shall pay the rent and all other sums due under the Lease . . . to [Thrivent] and shall have no liability to [GFP] for such rent and other sums . . . . [Lack's] hereby recognizes the Assignment made by [GFP] to [Thrivent] and agrees to pay, upon receipt of written demand from [Thrivent], all rents and other sums as directed by [Thrivent].

Case No. 41, Docket Entry No. 3-4 at 3.

### B.   The Bankruptcy Court Proceedings

On January 20, 2011, two months after it filed for bankruptcy, Lack's filed a notice of intent to vacate the Austin store and reject its lease pursuant to section 365 of the bankruptcy code, effective January 31, 2011.  Case No. 37, Docket Entry No. 7-2 at 9.  In February 2011, GFP and Thrivent each filed proofs of claims for the limited lease rejection damages allowed under the bankruptcy code. *See* 11 U.S.C. § 365(g) (stating that the rejection of an unexpired lease constitutes a breach of that lease); 11 U.S.C. § 502(b)(6) (limiting recovery for such breaches to 15% of the rent due on the remaining term of the lease).  The parties calculated the amount owed differently: GFP's claim was for $879,791.97, while Thrivent's

claim was for $780,955.41.  Case No. 37, Docket Entry No. 7-2 at 9.  Lack's objected to Thrivent's claim.[2]  *Id.*

The bankruptcy court held hearings on the parties' competing claims and on Lack's objection in January, April, and June 2012.  *Id.* at 10–11.  On July 25, 2012, that court issued an order and written opinion disallowing Thrivent's claim and allowing GFP to collect the lease rejection damages, but ruling that Thrivent had a lien on the damages such that GFP could only use and enjoy the damages as allowed under the terms of the loan documents.  *See* Case No. 37, Docket Entry Nos. 7-1; 7-2.  The keystone of the court's opinion was its holding that Thrivent was not entitled to collect the lease rejection damages GFP had assigned it as security for the loan until GFP defaulted.  This holding rested on the following, stepwise set of conclusions.

First, the lease rejection damages were rents, and thus, Texas law and the express terms of Assignment and Deed of Trust required GFP to be in default before Thrivent could collect the damages from GFP.  *See* Case No. 37, Docket Entry No. 7-2 at 13–16, 20.  Second, even though allowing GFP to retain the damages might violate the prohibition on anticipating rents more than one month in advance, Thrivent was not entitled to collect the rents because it had stipulated

---

[2] The Court notes that an insider relationship exists between GFP and Lack's.  GFP is owned by the Lack family, in part through the interestingly named "Keeping It Together, LLC."  *See* Case No. 37, Docket Entry No. 7-2 at 9 n.7.

that GFP was not in default. *See id.* at 16–20. Third, Thrivent could not collect the rents directly from Lack's under the Subordination and Attornment Agreement, even though the plain text of the Agreement did not condition collection from Lack's on GFP's default, because the Agreement had to be construed in conjunction with the other loan documents. *See id.* at 20–24. Fourth and finally, the bankruptcy court concluded that, even though Thrivent could not collect the damages itself, Thrivent had a lien on the damages under the Deed of Trust as proceeds of its lien on the Lack's lease and as rents assigned under the Assignment. *See id.* at 25–26.

Both parties timely appealed the adverse parts of the bankruptcy court's ruling. GFP agrees with the bankruptcy court's holding that Thrivent was not entitled to the damages, but it argues that court erred by encumbering them with an "equitable lien" in Thrivent's favor. Case No. 37, Docket Entry No. 7 at 16–17. Thrivent, in contrast, contends that the lien was appropriate given the bankruptcy court's ruling in favor of GFP, but it argues that the court erred on a more basic level by holding that Thrivent had no right to collect the damages in its own right. Case No. 41, Docket Entry No. 3 at 4–5. After several continuances granted at the parties' request to allow settlement negotiations, negotiations that ultimately proved fruitless, this Court heard oral argument in June 2013. The appeal is now ripe for decision.

## II.  STANDARD OF REVIEW

A district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment or order.  28 U.S.C. § 158(a).  The bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.  A finding of fact is clearly erroneous if, after review of all the evidence, the court is "left with a firm and definite conviction that the bankruptcy court erred." *In re McDaniel*, 70 F.3d 841, 843 (5th Cir. 1995) (citations omitted).  A bankruptcy court's conclusions of law and conclusions on mixed questions of law and fact are reviewed *de novo*. *In re U.S. Bass Corp.*, 171 F.3d 1016, 1021 (5th Cir. 1999).

## III.  DISCUSSION

### A. Thrivent's Appeal

The Court first addresses Thrivent's appeal of the bankruptcy court's holding that GFP was allowed to collect the lease rejection damages.  This is the closer question, and in any case is a natural predecessor to the issue in GFP's appeal whether any damages GFP does collect are encumbered by a lien.  The Court determines that the reasoning of the bankruptcy court was substantially correct and that the decision below should be affirmed; however, because Thrivent raises three colorable arguments in its favor, the Court will discuss those

arguments and why they are not sufficient to warrant reversal.

The first argument is that Thrivent should have been allowed to collect the rents from GFP—even though GFP had not defaulted—because Section 6.3 of the Deed of Trust specifically assigns the lease rejection damages to Thrivent without conditioning this assignment on a default by GFP.[3]  The first, lengthy sentence of Section 6.3 assigns the "leases, rents, issues, incomes, and profits" to Thrivent subject to a license in GFP's favor terminating only on GFP's default.  *See* Case No. 41, Docket Entry No. 4-2 at 2.  But the second sentence of Section 6.3 assigns to Thrivent "all claims for damages arising from rejection of any lease under the bankruptcy laws"—full stop—with no requirement that GFP has to be in default before Thrivent can collect the damages.  *Id.*

By itself, this distinction between the normal "rents" and the lease rejection damages in Section 6.3 is strong support for Thrivent's argument that the damages should not be subject to GFP's license to collect the rents.  But Section 6.3 is not the only provision in play.  As noted, the Assignment's granting clause also assigns

---

[3] The bankruptcy court did not address the effect of Section 6.3 on whether the lease rejection damages counted as "rents" that GFP had a license to collect.  *See* Case No. 37, Docket Entry No. 7-2 at 13 n.10.  Because absolute assignments under Texas law are creatures of the parties' intent, and may be triggered by events other than the assignor's default, a closer examination of the Assignment's granting clause and the Deed of Trust's Section 6.3 is necessary to determine whether the parties intended to condition Thrivent's collection of the damages on GFP's default.  *See Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981) (stating that an absolute assignment "operates to transfer the right to rentals automatically upon the happening of a specified condition, such as default," but not requiring that the triggering condition be a default); *F.D.I.C. v. Int'l Prop. Mgmt.*, 929 F.2d 1033, 1035 n.2 (5th Cir. 1991) (noting that under the "contingent present assignment" theory of absolute assignments the *Taylor* court adopted, the condition triggering the assignee's right to receive the rentals was "usually" default).

the rents to Thrivent effective on a default by GFP, but, unlike Section 6.3, it specifically includes the lease rejection damages, *i.e.*, "claims for damages resulting from default under [the Lack's lease] whether resulting from . . . acts of bankruptcy or otherwise" in its general definition of "rents."[4]  Case No. 41, Docket Entry No. 3-3 at 3.  Thus, whether Thrivent is entitled to collect the lease rejection damages depends on whether those damages are treated as "rents" subject to the Assignment's granting clause and requirement that GFP default, or if instead they are carved out of this general definition of "rents" by the specific reference to lease rejection damages in Section 6.3.

In Thrivent's favor is the textbook rule of contractual interpretation that specific provisions control over more general ones.  *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) (citations omitted); *Wells Fargo Bank v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App.—Dall. 2006, pet. denied) (citations omitted).  Because Section 6.3 expressly distinguishes lease rejection damages from the normal rents, and because it refers to them more specifically than the Assignment does (compare Section 6.3's "claims for damages arising from rejection of any lease under the bankruptcy laws" with the Assignment's "claims for damages resulting from default under said Leases

---

[4] Because the bankruptcy code defines the rejection of a lease as a breach of that lease, *see* 11 U.S.C. § 365(g), lease rejection damages are indeed "claims for damages resulting from default under" a lease that result from "an act of bankruptcy."  Case No. 41, Docket Entry No. 3-3 at 3.

whether resulting from . . . acts of bankruptcy or otherwise"), all things being equal, Section 6.3's disposition of the lease rejection damages would control over that prescribed by the Assignment.

But, notwithstanding this canon of construction, the Court concludes that it is the Assignment's disposition of the damages that controls.  Section 6.3 of the Deed of Trust itself states in its final sentence that, "[t]o the extent inconsistent with the terms of this Article 6, the terms of the Assignment of Leases shall control."  Case No. 41, Docket Entry No. 4-2 at 3.  There is no doubt that the two provisions are in conflict; if the terms of Section 6.3 control the disposition of the damages, Thrivent may collect all of the damages immediately, even though GFP has never defaulted—a result that is disallowed by the Assignment.  Thus, this reading of Section 6.3 is inconsistent with the Assignment and, under Section 6.3's own terms, the Assignment's terms control.  Moreover, at oral argument, Thrivent's counsel conceded in response to this Court's questioning that the lease rejection damages are indeed "rents" subject to the Assignment.  Therefore, as the bankruptcy court held, the lease rejection damages are rents that Thrivent may not collect from GFP until GFP defaults under the loan documents.

The second argument Thrivent makes is that Lack's was required to pay the lease rejection damages directly to Thrivent under the Subordination and Attornment Agreement regardless whether GFP was in default.  In Thrivent's

10 / 17

view, the bankruptcy court erred by reading in a requirement that GFP be in default before Lack's had to pay, a requirement that Thrivent argues flies in the face of the Agreement's plain language and the parties' unambiguous intent.

Thrivent is correct that the text of the Agreement does not expressly condition Lack's duty to pay on a default by GFP. But this does not end the story. In full, the sentence that gives rise to Lack's duty to pay is as follows: "[Lack's] hereby recognizes the Assignment made by [GFP] to [Thrivent] and agrees to pay, upon receipt of written demand from [Thrivent], all rents and other sums as directed by [Thrivent]." Case No. 41, Docket Entry No. 3-4 at 3. This sentence creates a duty in Lack's to pay Thrivent, for sure, but it does so only upon Lack's recognition of the Assignment, the document that guarantees GFP the right to collect the rents until it defaults.

Tried and true principles of contractual interpretation support the bankruptcy court's construction of the Agreement. "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together." *DeWitt Cnty. Elec. Co-op. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999) (citations omitted). In order to determine the parties' true intentions as expressed in the contract, courts consider the entire writing "in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Seagull Energy E. & P., Inc. v. Eland Energy, Inc.*, 207

S.W.3d 342, 345 (Tex. 2006) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original)).  The bankruptcy court's construction of the Agreement harmonizes the different loan documents because it maintains the grant of a license to GFP in the Assignment and Deed of Trust to collect the rents until it defaults.  And it does not render the Subordination and Attornment Agreement meaningless because the covenant at issue still serves a purpose: as the bankruptcy court stated, in the event that GFP had defaulted, it would give Thrivent a contractual hook to collect the rents directly from Lack's.  *See* Case No. 37, Docket Entry No. 7-2 at 23 & n.21.

By contrast, Thrivent's interpretation of the Subordination and Attornment Agreement would allow it to demand payment of the rents from the tenant at any time, regardless whether the borrower was performing its obligations under the loan agreement or even whether the tenant was performing under its lease.  This construction would conflict with the provisions in the Assignment and Deed of Trust stating that GFP's license to collect the rents continues until GFP defaults.  If Lack's can be obligated to pay Thrivent, and not GFP, at Thrivent's whim, then the license GFP has to collect the rents does not truly last "unless and until an Event of Default" as the Assignment states—it lasts only so long as Thrivent refrains from exercising its right to demand the rents from Lack's.  Case No. 41, Docket Entry No. 3-3 at 4.

The third argument in Thrivent's favor is that GFP cannot collect the lease rejection damages because the Assignment and Deed of Trust prohibit it from anticipating the rents more than one month in advance. *See* Case No. 41, Docket Entry No. 3-3 at 4; 4-2 at 1. There is some inconsistency in the fact that the Assignment both grants a license to GFP to collect the lump-sum lease rejection damages but also prohibits GFP from anticipating the rents more than one month in advance. *See* Case No. 41, Docket Entry No. 3-3 at 3–4. The best reading of these possibly conflicting provisions may be that the ban on anticipating rents only prevents GFP from collecting the normal rent payments in advance, but does not apply to lump-sum payments of lease rejection damages. But even if the prohibition on anticipating rents does apply to GFP's collection of the lease rejection damages, GFP would not be anticipating rents because Thrivent's lien encumbers the damages and prevents GFP from making full use of them. Given the ruling that Thrivent has a lien on the damages that prevents GFP from taking them free of its obligations under the loan documents, the Court holds that GFP would not violate the ban on anticipating rents by collecting the damages.

However, even assuming that GFP would be anticipating rents by collecting the damages, the bankruptcy court correctly held that this is not relevant to whether GFP is entitled to the damages because Thrivent does not argue that GFP is currently in default. *See* Case No. 37, Docket Entry No. 7-2 at 18 ("Though GFP

may be 'anticipating rents,' Thrivent has not alleged any default."). The Deed of Trust's definition of "Event of Default" makes clear that GFP does not automatically default if it anticipates the rents; such a violation only constitutes a default if Thrivent chooses to treat it as a default and provides GFP with written notice of default and time to cure. *See* Case No. 41, Docket Entry No. 4-2 at 5. Thrivent may choose to treat GFP's collection of the lease rejection damages as a default and act on it, as it has the option to do under the Deed of Trust, but the potential of a future default does not affect GFP's entitlement to the damages at this time.

As demonstrated above, this is a difficult issue because there are provisions in the various agreements that, viewed in isolation, support both sides' position. However this tension is reconciled, one party will be able to point to a provision that points in the other direction. The Court concludes, however, that the bankruptcy court's interpretation is the one that best harmonizes the agreements as a whole and defers to the Assignment as a tie-breaker per the parties' intention. The Court will therefore affirm the bankruptcy court's ruling that GFP was entitled to collect the Lack's lease rejection damages.

### B. GFP's Appeal

The Court next turns to GFP's appeal of the bankruptcy court's ruling that the lease rejection damages are encumbered with a lien in Thrivent's favor.

Although GFP argues that the bankruptcy court erred by imposing an unjustifiable "equitable" lien on the damages, Case No. 37, Docket Entry No. 7 at 16, examination of the bankruptcy court's opinion reveals it did no such thing. Instead, the bankruptcy court ruled as a matter of course that Thrivent's security interest on the lease attached to the damages as proceeds of the lease. *See* Case No. 37, Docket Entry No. 7-2 at 24–26.

This ruling is correct. GFP has a license to collect the damages as part of the rents, but Thrivent has still been assigned those damages, and GFP can only use them as allowed under the loan documents. Moreover, the Deed of Trust (and not principles of equity) creates a lien in the damages by granting Thrivent a security interest in "[a]ll rents . . . now due or which may hereafter become due under or by virtue of and together with all right, title and interest of [GFP] in and to any lease . . . for the use or occupancy of the Premises . . . ." Case No. 41, Docket Entry No. 4 at 8.

The prohibition on GFP anticipating rents more than a month in advance, *see* Case No. 41, Docket Entry No. 4-2 at 1, if construed to apply to the lease rejection damages as Thrivent argues, is further support for this conclusion. Under this view, if the bankruptcy court had allowed GFP to take all $880,000 in lease rejection damages free and clear of any obligation to Thrivent, GFP would have been placed in violation of the ban on anticipating rents (which ranged between

$28,000 and $33,000 per month over the remaining term of the Lack's lease) more than a month in advance. *See* Case No. 41, Docket Entry No. 3-5 at 3. Because the lien prevents GFP from enjoying the full use the rents, *see* Case No. 37, Docket Entry No. 7-1 at 2–3 (bankruptcy court Order allowing GFP to use the damages only "as allowed by the Loan Documents"), GFP is forced to abide by its obligation not to anticipate rents.

The bankruptcy court's ruling must therefore be affirmed. The Court will, however, note that an additional controversy has arisen regarding the meaning and effect of the bankruptcy court's Order establishing Thrivent's lien. That Order states that "Thrivent's lien attaches to [the damages] until all obligations are paid in full under the Note relating to Thrivent's $3,400,000.00 Loan to GFP, and that until the obligations under the Note are paid, GFP may only use the funds as allowed by the Loan Documents." *Id.* Because GFP's license allows it to "use and enjoy" the rents as they accrue, it argues that the Order gives it free use of all the damages that would have accrued under the normal course of the Lack's lease (essentially, given the time that has passed, the entire sum of damages). Thrivent argues in response that the Order does not give GFP free use of any of the damages until it has completely repaid its debt to Thrivent and discharged the Note.

This issue is one in the first instance for the bankruptcy court. Although GFP moved for reconsideration of that court's ruling, *see* Bankruptcy Case No. 10-

60149, Docket Entry No. 1790, it did not file a motion asking the court to clarify its Order. In the absence of a full record, the Court declines to interpret the bankruptcy court's Order for the first time on appeal. The proper avenue for raising this issue is in a motion for clarification to the bankruptcy court.

## IV. CONCLUSION

The Court concludes that the bankruptcy court correctly interpreted the law when it held that GFP had a license to collect the lease rejection damages subject to a lien in Thrivent's favor. Accordingly, the Court **AFFIRMS** the bankruptcy court's July 25, 2012 Order Regarding Debtors' Sixth Omnibus Objection to (1) Undocumented Claims, and (2) Claims For Which the Debtors Are Not Liable (Bankruptcy Case No. 10-60149, Docket Entry No. 1769).

**IT IS SO ORDERED**.

**SIGNED** this 29th day of August, 2013.

_____
Gregg Costa
United States District Judge